RICHMOND SCREW ANCHOR COMPANY *v.* UNITED STATES.

CERTIORARI TO THE COURT OF CLAIMS

No. 99. · Argued December 1, 1927.—Decided January 3, 1928.

1. Patent No. 1,228,120, issued May 29, 1917, to Lenke for a cargo beam capable of moving on a horizontal axis so as to present its full strength in the line of stress, thus permitting the use of less metal than was required for the fixed beam of the prior art, and saving expense in installation—*held* valid. P. 339.
2. Where two reasons are given in an opinion for the same decision, neither is *obiter dictum.* P. 340.
3. Rev. Stat. § 3477, forbidding assignments of claims against the United States prior to allowance, liquidation and issuance of a warrant for payment, applied to claims for infringement of a patent. P. 340.
4. The right to recover for past infringement of a patent by a private party is assignable with the patent. P. 344.
5. Under the Act of June 25, 1910, where a patented article was made for the United States by a contractor, unauthorized by the patent owner, and used by the United States, the patent owner had an assignable right of action for the infringement against the contractor; and a claim against the United States for reasonable compensation for the use, assertable in the Court of Claims, but subject to the provisions of Rev. Stats. § 3477 forbidding assignments. Pp. 341, 344, 346.
6. Under the Act of July 1, 1918, which did away with the remedy against the contractor in such cases, and confined the patent owner to a suit against the United States in the Court of Claims for "recovery of his reasonable and entire compensation for such use and manufacture," the claim of the patent owner against the

United States for manufacture and use occurring since the date of the Act, is assignable with the patent, notwithstanding the sweeping terms of Rev. Stats. § 3477. P. 345.

7. Federal statutes should be so construed as to avoid serious doubt of their constitutionality. P. 346.

8. The special intent to permit such assignments, deducible from the later statute and its history, though not expressed, must prevail over the broad general terms of the earlier one forbidding assignments. P. 346.

61 Ct. Cls. 397, reversed.

CERTIORARI, 273 U. S. 679, to a judgment of the Court of Claims, rejecting a claim for infringement of a patent.

*Mr. Charles E. Hughes,* with whom *Messrs. Wm. Houston Kenyon, Archibald Cox, O. Ellery Edwards, Joseph W. Cox,* and *Douglas H. Kenyon* were on the brief, for petitioner.

Use by the United States after March 7, 1921, when petitioner's ownership of the patent began, was in itself an infringement of the patent and, without more, supports the petition and entitles the petitioner to recovery under the findings of fact made by the Court of Claims. *Cramp* v. *International Co.,* 246 U. S. 28; *Marconi Wireless Co.* v. *Simon,* 246 U. S. 46; 227 Fed. 906, and 231 Fed. 1021; *Crozier* v. *Krupp,* 224 U. S. 290; Act of 1918; Act of 1910; *Sperry* v. *Arma Engineering Co.,* 271 U. S. 232.

Manufacture by the contractors for the United States on January 1, 1919, prior to petitioner's ownership, was an infringement by the contractors, the right to recover for which was assignable with the patent under Rev. Stats. § 4898, and the right to recover from the United States the reasonable and entire compensation for that infringement was given to the then owner of the patent by the Act of 1918. This was assignable with the patent under Rev. Stats. § 4898, and in spite of Rev. Stats. § 3477, and, without more, supports the petition and en-

titles petitioner to a recovery under the findings of fact made by the Court of Claims. *E. W. Bliss Co.* v. *United States,* 253 U. S. 187; *Standard Oil Co.* v. *United States,* 267 U. S. 76; *Sperry Gyroscope Co.* v. *Arma Co.,* 271 U. S. 232.

To construe the Act of 1918 as relieving the contractors from all liability to the then owner of the patent or to his assignee, and substituting therefor a liability of the United States to the then owner of the patent only and (under Rev. Stats. § 3477) not to his assignee, would appear to be taking private property for public use without due process of law or just compensation, and certainly would not give the owner of the patent an additional remedy, as the Act of 1918 purports to do, but a substantially curtailed remedy. It is certainly not clear that the Act of 1918 intended this curtailment of remedy. A construction of the Act of 1918 in this regard which preserves all the rights of the owner of the patent, rather than substantially curtails those rights and remedies, is clearly indicated and is enforced by familiar canons of construction.

While, in so far as concerns the contractors' infringing acts, the suit is, by virtue of the Act of 1918, one against the United States, the claim was not against it, but against the contractors. The Act of 1918 changed the defendant and the forum, but did not change the nature or the incidents of the claim.

The history of the Act of 1918 shows the legislative intent to relieve the contractor from all liability and from all apprehension of liability, by substituting the liability of the United States.

Why does the Act of 1918 exclude from its benefits the assignee of any patentee who at the time he makes the claim for past infringement by the United States is in the service of the Government, if all assignees are excluded by Rev. Stats. § 3477?

The Act names the defenses of which the United States is permitted to avail itself, and they do not include Rev. Stats. § 3477.

Rev. Stats. § 3477, is not applicable to any branch of the claim against the United States for infringement prior to March 7, 1921, for the assignability of that branch of the claim is determined by the patent statutes, Rev. Stats. § 4898, as an incident of the assignability of the patent itself.

The so-called decision in *Brothers v. United States,* 250 U. S. 88, was an *obiter dictum,* and we respectfully submit that it was error and we ask reconsideration. *United States v. Corbett,* 215 U. S. 233; *Grigsby v. Russell,* 222 U. S. 149; *Barnes v. Alexander,* 232 U. S. 117.

Section 3477 refers to claims in the nature of a chose in action at common law, and an assignment of Letters Patent together with all claims for past infringements, is not within its meaning. *Crown Die & Tool Co. v. Nye Tool Works,* 261 U. S. 24; *Gayler v. Wilder,* 10 How. 477; Robinson on Patents, Vol. 3, p. 122, § 937; *Gordon v. Anthony,* 16 Blatchf. 234.

Where a specific section of a law is in apparent conflict with a general section, the two should be considered and the context considered and the probable legislative intent, but presumably the specific should prevail over the general. *Townsend v. Little,* 109 U. S. 504; *Washington v. Miller,* 235 U. S. 422.

Under the findings of fact made by the Court of Claims, the patent is valid, and is infringed, and the petitioner is entitled to a substantial money recovery from the United States, which shall cover and include the capital saving realized by the contractors and the United States. *Mowry v. Whitney,* 14 Wall. 620; *Tilghman v. Proctor,* 125 U. S. 136; *Mevs v. Conover,* 125 U. S. 144; *Elizabeth v. Pavement Co.,* 97 U. S. 126; *Root v. Railway Co.,* 105 U. S. 189; *Thompson v. Wooster,* 114 U. S. 104; *The*

*Beaconsfield,* 158 U. S. 303. See also *Atlantic & Pacific Ry. Co.* v. *Laird,* 164 U. S. 393; *Clay* v. *Waters,* 161 Fed. 815; *Miller* v. *Robertson,* 266 U. S. 243.

An additional sum, equal to interest on the capital saving of $103,480 from January 1, 1919, should be included in the award to petitioner.

*Mr. Assistant Attorney General Galloway,* with whom *Solicitor General Mitchell* was on the brief, for the United States.

So far as § 3477 is concerned, there is no reason to distinguish as to the assignability of unliquidated claims against the United States between those arising through infringement by the United States and those based on the assumption of liability by the United States for infringement by others. *United States* v. *Gillis,* 95 U. S. 407; *Spofford* v. *Kirk,* 97 U. S. 484; *Goodman* v. *Niblack,* 102 U. S. 556; *Seaboard Air Line* v. *United States,* 256 U. S. 655; *Price* v. *Forrest,* 173 U. S. 410; *Brothers* v. *United States,* 250 U. S. 88.

The findings show no basis for substantial recovery for infringement occurring after petitioner acquired the patent. If claims for infringement arising previously were not lawfully assigned to petitioner, its recovery is limited to infringements by the United States occurring between March 7, 1921, and the date of the commencement of this suit, May 23, 1921, a period of little over two months. The infringing manufacture of the beams for the United States and their installation took place before March 7, 1921. The value of the invention rests in the substitution of a lighter beam for a heavier one, with a resulting saving in metal. There is no finding that the completed and installed device has any advantage over the old type of rigid cargo beam.

The petitioner attempts to treat this saving in cost of installation, or in the original cost of the equipment, as a

saving in cost of handling cargoes, but the saving took place before any cargo was handled, and would have been the same if the apparatus had been destroyed the day after it was installed. It is settled, too, except where accountings for profits are involved (and the United States has made no profit in that sense, and, not being subject to injunction, is not subject to recovery of profits, which is only an incident to suit for injunction), that recovery for infringement is measured by the plaintiff's loss, not by the defendant's gain. *Coupe* v. *Royer,* 155 U. S. 565; *Brown* v. *Lanyon,* 148 Fed. 838.

There is a finding that the fair license value on a royalty basis is the sum of $20 a cargo beam, amounting in this case to $16,200, irrespective of the length of time the completed apparatus is used; but if that be the measure of recovery, the cause of action for it arose when the beams were installed, in favor of the then owner of the patent, who is now entitled (his assignment being void), unless he has lost his right for some other reason, to recover such license fees from the United States. Because of § 3477, Rev. Stats., the situation is the same as if the assignment of the patent had been made without any assignment of claims for past infringement, and as if the former and present owners of the patent were each seeking to recover damages from the United States, and the question was as to how the entire recovery from the United States should be divided between them. It seems obvious from the findings that if the use of the apparatus since its installation constitutes in any proper sense a use of the invention, it is only technically so, and the recovery for the period after March 7, 1921, and prior to May 23, 1921, could only be nominal, the substantial recovery for damages going to the one who owned the patent when the beams were manufactured and installed. Being open to such a claim in favor of the original owners of the patent should relieve the United States from

a liability for the same thing to the present owner of the patent. See *Seymour* v. *McCormick,* 16 How. 480; *Birdsall* v. *Coolidge,* 93 U. S. 64; *Stutz* v. *Armstrong,* 25 Fed. 147; *Bloomer* v. *Millinger,* 1 Wall. 340.

If the petitioner could in any event recover only nominal damages for the period from March 7, 1921, to May 23, 1921, that alone would afford no reason for reversing the judgment below. *Diamon* v. *Taylor,* 99 Minn. 527.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a suit by the Anchor Company brought under the Act of June 25, 1910, c. 423, 36 Stat. 851, as amended July 1, 1918, c. 114, 40 Stat. 704, 705, to recover for the infringement of Letters Patent No. 1,228,120 for a cargo beam, granted May 29, 1917, to Melchior Lenke, and assigned by Lenke to Thomas E. Chappell, and by Chappell to the Anchor Company.

The Court of Claims first decided that the plaintiff was entitled to recover from the United States. Thereafter the court made a second decision, on December 7, 1925, in which it found as an additional fact that through the contractors who manufactured for the United States, the United States had installed, on or before January 1, 1919, 810 cargo beams covered by the Lenke patent, and that it did not thereafter install any more; that the use of the Lenke cargo beams by the United States resulted in a saving in the expense of installation of cargo beams used by it amounting in the case of each beam to 2,000 pounds of metal, with a value of 6½ cents per pound; that the single advantage which the United States gained by the use of the beams was the saving in cost of the same and the convenience resulting from their novelty.

Upon the additional findings of fact, the Government contended that the former judgment should be set aside,

and a new one entered dismissing the plaintiff's petition, for the reason that the assignment of the claims for infringement to the plaintiff was void and of no effect under section 3477 of the Revised Statutes. The Court of Claims on the second hearing yielded to this contention and dismissed the petition.

A cargo beam is a beam employed in combination with other elements to carry the weight of cargo to be removed from the holds of vessels alongside a pier or wharf and deposited on the pier or in the warehouses fronting on the same. Such beams are old and have been used for years. The method existing prior to this invention was the use of two channel beams, spaced several inches apart, firmly riveted together at the top and bottom by means of angle irons or plates, and rigidly affixed at either end to two uprights extending upward through the roof of the warehouse in brackets designed for the purpose. The record showed that a beam adaptable for the purpose weighed 3,300 pounds and must possess the full strength of withstanding the pull of cargo weights from both a vertical and diagonal angle.

Lenke conceived the idea of substituting for the fixed beam a single I beam of about 1,300 pounds in weight. At each end of the I beam he attached laterally a strong bar by means of rivets and angle irons providing holes near its upper end, through which holes he introduced pivots, thereby enabling the cargo beam to swing into any angle from which the load was applied. Lenke fastened U bolts into the center or neutral zone of the beam to receive the hoisting tackle. The real worth of the invention lay in the lightness of the cargo beam he used because the operator could present it so as to make the strain on the beam to be vertical even when force was applied from an angle.

The patent was a combination patent, and in view of the prior art was limited to the exact terms of the

claims, which made it quite narrow, as its course through the Patent Office clearly demonstrated.

It is argued, on behalf of the United States, that Lenke's invention was unpatentable because it embodied nothing more than a natural and normal modification of existing ideas. Such modifications and their advantage were all very clear after the fact; but the old beams had been in use for a number of years and a heavy weight of metal had been used when, by Lenke's device, it was cut down two-thirds. Lenke's cargo beam almost universally superseded the old one. The United States used it and it was installed in nearly every pier in the country. No one else had foreseen its advantage. Lenke offered it as a solution of the problem at a minimum cost with a maximum efficiency. The United States conceded in the Court of Claims that Lenke's patent was novel in the sense that there was nothing in the prior art exactly like it, and that it was useful. While thus, in a way, he improved an existing idea, he developed a new idea. The question of its patentability was worked out in the Court of Claims and all the judges concurred in upholding its validity and did not change their conclusion in the second judgment. We see no reason for differing from that conclusion.

The Court of Claims based its second judgment against the plaintiff on the strength of section 3477 of the United States Revised Statutes, as construed by this Court in *Brothers* v. *United States,* 250 U. S. 88, 89. The section reads as follows:

"All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attest-

ing witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

In the *Brothers* case, Mr. Justice Pitney said the claim of Brothers for compensation for a patent he had secured by assignment could not apply to an "unliquidated claim against the Government arising prior to the time he became the owner of the patent. Rev. Stats., § 3477."

Counsel for the petitioner here insist that this statement was not necessary to the decision because the conclusion in that case was clearly made to depend on the non-infringement of the patent and that the reference to section 3477 could only be regarded as *obiter dictum*. It does not make a reason given for a conclusion in a case *obiter dictum* that it is only one of two reasons for the same conclusion. It is true that in this case the other reason was more dwelt upon and perhaps it was more fully argued and considered than section 3477, but we can not hold that the use of the section in the opinion is not to be regarded as authority except by directly reversing the decision in that case on that point, which we do not wish to do.

An elaborate argument has been made to show that the section should not apply to the assignment of claims for infringements of a patent, for the reason that a claim for infringements is not a common law chose in action but grows out of rights created by the statutes covering patents, the provisions for their assignment and for suits by

the assignee to be found in sections 4898, 4919, 4921 and other related sections. *Crown Die & Tool Co.* v. *Nye Tool & Machine Works*, 261 U. S. 24, 42, 43. But there is no conflict between the patent sections and section 3477. The latter section was passed to protect the Government and prevent frauds upon the Treasury. *Western Pacific R. R. Co.* v. *United States*, 268 U. S. 271, 275; *Seaboard Air Line Ry.* v. *United States*, 256 U. S. 655, 657; *Goodman* v. *Niblack*, 102 U. S. 556, 559, 560. And it would seem that the danger of exploiting and harrassing the Government with the use of assignments of claims for patent infringement was within the general purpose of that section.

We come then to the question whether section 3477 and the *Brothers* case apply to the case before us, and that requires an interpretation of the amending Act of 1918 and its operation upon the rights of the assignee and owner of the patent and its claims for infringement. Exceptions to the general language of section 3477 have been recognized by this Court because not within the evil at which the statute aimed. *Seaboard Air Line Ry.* v. *United States, supra; Western Pacific R. R. Co.* v. *United States, supra; Goodman* v. *Niblack, supra; Price.* v. *Forrest*, 173 U. S. 410, 421–423; *Parrington* v. *Davis*, 285 Fed. 741, 742. We think that the situation created by the provisions of the amending Act of 1918 is such that section 3477 does not apply to all of the assigned claims of the petitioner for infringement under that Act. The Act of June 25, 1910, c. 423, 36 Stat. 851, provided that whenever an invention described in and covered by a patent of the United States should thereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner might recover reasonable compensation for such use by suit in the Court of Claims. The Act contained a number of provisos, only one of which is important here, namely, that in any such suit the

United States might avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for an infringement, as set forth in Title 60 of the Revised Statutes or otherwise.

This Court held, March 4, 1918, in *Cramp & Sons* v. *International Curtis Marine Turbine Company,* 246 U. S. 28, 42, 45, that the Act of 1910 did not effect a license to the United States or the contractor, making the patented device, to make or use the invention, and that the contractor could be sued for an injunction and for infringement in spite of the operation of that Act.

On April 20, 1918, the Acting Secretary of the Navy wrote a letter to the Chairman of the Committee on Naval Affairs of the Senate, in which he said, referring to the *Cramp* case, that the Department was " confronted with a difficult situation as the result of a recent decision by the Supreme Court affecting the government's rights as to the manufacture and use of patented inventions, and it seems necessary that amendment be made of the Act of June 25, 1910 . . . . the decision is, in effect, so far as it is of importance here, that a contractor for the manufacture of a patented article for the government is not exempt, unless he is only a contributory infringer, from injunction and other interference through litigation by the patentee.

"A prior decision of the Supreme Court, that in the case of *Crozier* v. *Krupp,* had been interpreted as having the opposite meaning, and the department was able up to the time of the later decision, on March 4th last, to proceed satisfactorily with the procuring of such patented articles as it needed, leaving the matter of compensation to patentees for adjustment by direct agreement, or, if necessary, by resort to the Court of Claims under the above mentioned act of 1910. . Now, however, manufacturers are exposed to expensive litigation, involving the possibilities of prohibitive injunction, payment of royalties, rendering of accounts, and payment of punitive damages, and they

are reluctant to take contracts that may bring such severe consequences. The situation promises serious disadvantage to 'the public interests, and in order that vital activities of this department may not be restricted unduly at this time, and also with a view of enabling dissatisfied patentees to obtain just and adequate compensation in all cases conformably to the declared purpose of said act, 1 have the honor to request that the act be amended by the insertion of a proper provision therefor in the pending naval appropriation bill."

In response to this communication, the Act of July 1, 1918, amending the Act of 1910, was adopted. (See *Wood v. Atlantic Gulf & Pacific Co.*, 296 Fed. 718, 720, 721, and Congressional Record, 65th Congress, Second Session, Proceedings of June 18, 1918, p. 7961). The amendment (c. 114, 40 Stat. 704, 705) reads as follows:

" That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

This is followed by the same provisos as in the Act of 1910, which need not be repeated here.

The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word " entire " emphasizes the exclusive and comprehensive character of the remedy provided. As the Solicitor General says in his

brief with respect to the Act, it is more than a waiver of immunity and effects an assumption of liability by the Government.

Under the Act of 1910, the remedy of the owner of a patent where the United States had used the invention without his license or lawful right to use it, was to sue for reasonable compensation in the Court of Claims, and that remedy was open to Lenke for the cargo beams covered by his patent installed and used by the United States before July 1, 1918.

The evidence does not show at what time during the year 1918 the beams were installed. The first finding is that Lenke wrote to an officer in the Quartermaster's Department on duty at the Army supply base at Brooklyn, on December 31, 1918, complaining that the Lenke cargo beam was being used by the Government at that supply base without permission from the patentee, but nothing happened but a fruitless correspondence.

The findings of the Court of Claims show that, on January 1, 1919, 810 of the beams had been installed at the instance of the Government, but how many were installed after July 1, 1918, when the law in question was passed, has not been found by the Court of Claims.

On September 29, 1920, the Lenke patent was assigned by Lenke to one Thomas E. Chappell, who in turn on March 7, 1921, assigned it to the plaintiff company, in accordance with the statute, and the assignment in each case covered all rights of action for past infringements of the patent and all rights to recoveries by suit for damages, profits and royalties for infringements of every kind whatsoever.

It is settled that, but for the Act of 1918, the two assignments vesting title in the Anchor Company would enable it to recover from the contractor for all his infringements (*Crown Die & Tool Co.* v. *Nye Tool & Machine Works, supra; Gordon* v. *Anthony,* 16 Blatchf. 234, Fed.

Cas. No. 5,605; *Waterman* v. *Mackenzie*, 138 U. S. 252, 256, 261; *Galer* v. *Wilder*, 10 How. 476, 494; Robinson on Patents; vol. 3, sec. 937, p. 122). If now section 3477 applies and these assignments are rendered void, the effect of the Act of 1918 is to take away from the assignee and present owner not only the cause of action against the Government, but also to deprive it of the cause of action against the infringing contractor for injury by his infringement. The intention and purpose of Congress in the Act of 1918 was to stimulate contractors to furnish what was needed for the War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents. The letter of the Assistant Secretary of the Navy, upon which the Act of 1918 was passed, leaves no doubt that this was the occasion for it. To accomplish this governmental purpose, Congress exercised the power to take away the right of the owner of the patent to recover from the contractor for infringements. This is not a case of a mere declared immunity of the Government from liability for its own torts. It is an attempt to take away from a private citizen his lawful claim for damage to his property by another private person which but for this Act he would have against the private wrongdoer. This result, if 3477 Rev. Stats. applies and avoids the assignment, would seem to raise a serious question as to the constitutionality of the Act of 1918 under the Fifth Amendment to the Federal Constitution. We must presume that Congress in the passage of the Act of 1918 intended to secure to the owner of the patent the exact equivalent of what it was taking away from him. It was taking away his assignable claims against the contractor for the latter's infringement of his patent. The assignability of such claims was an important element in their value and a matter to be taken into account in providing for their just equivalent. If section 3477 applied, such equivalence was impossible.

It is our duty in the interpretation of federal statutes to reach a conclusion which will avoid serious doubt of their constitutionality. *Phelps* v. *United States,* 274 U. S. 341.   Moreover, we should seek to carry out in our dealing with the Act of 1918 and Revised Statutes 3477 the very important Congressional purpose of the former, as already explained, in the promotion of the War, as a special legislative intent.   It is our duty to give effect to that special intent although it be not in harmony with a broad purpose manifested in a general statute avoiding assignment of claims against the Government, enacted some eighty years ago. *In re Rouse, Hazard & Co.,* 91 Fed. 96, 100, 101; *Townsend* v. *Little,* 109 U. S. 504, 512; *Washington* v. *Miller,* 235 U. S. 422, 428.   This is in accord with general rules of interpretation, as shown in these authorities, and reconciles section 3477 Revised Statutes and the Act of 1918, if we hold, as we do, that section 3477 does not apply to the assignment of a claim against the United States which is created by the Act of 1918 in so far as the Act deprives the owner of the patent of a remedy against the infringing private contractor for infringements thereof and makes the Government indemnitor for its manufacturer or contractor in his infringements.

Such a conclusion requires us to reverse the case and remand it to the Court of Claims for additional findings to show how many of the patented beams were made by contractors and furnished to the United States after the passage of the Act of July 1, 1918, and what would have been a reasonable royalty therefor.

The question of the amount of or the rule for measuring the recovery we do not decide, but leave that for further argument and consideration by the Court of Claims, because of the novel and only partial application of § 3477 Rev. Stat.

*Reversed and remanded.*