## In re AMAND.
### Patent Appeal No. 3069.

Court of Customs and Patent Appeals.
Feb. 20, 1933.

HATFIELD, Associate Judge, dissenting.

Langner, Parry, Card & Langner, of Chicago, Ill. (E. F. Wenderoth and C. M. Elder, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant's application is for patent upon claimed improvements in "sheeting-piles"

of the type used in such massive structures as cofferdams, retaining walls, and the like, in which interlocking metallic plates variously designated in the art as "planks," "sheets," "profiles," etc., are driven, or rammed, into the ground to form walls.

The application having been rejected by the examiner, appeal was taken to the Board of Appeals of the United States Patent Office. The latter tribunal affirmed the examiner's decision. Petition for rehearing was filed and denied, whereupon appeal was taken to this court.

Four claims are involved, numbered 16, 17, 18, and 19, respectively. Of these No. 19 appears to be fairly representative: "19. An assembled Z-shaped sheet pile formed by the connection of two single and symmetrical U-shaped elements having flanges diverging exteriorly, and provided each with a massive extremity having in section the profile of a trapeze the connected flanges being arranged in rectilinear relation in such a way that the median flange of the thus formed Z-shaped sheet pile lies in a plane, a symmetrical H-shaped beam connecting said two U-shaped elements, in the two depressions of which the edges of the flanges of the elements are rigidly embedded before the ramming, the said depressions having in section the profile of a trapezoid in such a way that the internal faces of said depressions are in contact along a surface with the external faces of the massive extremities of the U-shaped elements, a second H-shaped beam with an analogous section being adapted at the free extremity of one of the U-shaped elements."

Claim 16 calls specifically for a Z-shaped pile "constituted by three elements," and claim 17 for one "constituted by four elements." The "elements" meant are (a) the U-shaped plate or "profile" and (b) the H-shaped "beam." The three-element pile consists of two U-shaped profiles rigidly joined together by one H-shaped beam. The four-element pile consists of two U-shaped profiles and two H-shaped beams rigidly joined together, the outside beam being ready to receive the next adjacent profile. Each of the claims discloses that the final shape of the unit created by the assembly of the named elements is substantially that of a Z, and each calls for the plates to be rigidly connected to the beam before the unit is rammed or driven into the ground. The specification describes the manner by which the locking of profiles and beams is effected, and states that the jointures may be made rigid

by "pressing, riveting, keying or any other known means."

Claims 18 and 19 are more specific than are claims 16 and 17 in describing a structural form wherein the ends of the U-shaped parts have a substantially trapezoidal section, said ends being rigidly embedded in corresponding recesses of H-shaped beams before ramming. Each claim refers to the U-shaped members and also the H-shaped beams as being symmetrical, by which is meant, as we understand it, that an exact alignment of the units in the finished wall results.

The references cited are:

Larssen, 839608, December 25, 1906.
Schiffler, 1085492, January 27, 1914.
Schiffler (Canad.), 204803, October 12, 1920.

The drawings of the Larssen patent show two figures both of which disclose a series of "dished" sheet-piles "fitted alternatively right and left." These have flanges and, when set, the flanges of one sheet meet the flanges of that next adjacent. In Figure 1, as explained in the specification, is shown a form of locking the flanges (which there are overlapped) together "by riveted guide bars." In Figure 2 is shown an alternate plan of joining the flanges (not there overlapped, but meeting end to end), by means of substantially I-shaped bars, "so that no riveting is required." The shape of these individual profiles is quite like the shape of appellant's profiles and, in series, they form Z-shaped sections, thus making a zigzag wall, very similar in general appearance to the wall of appellant, except that the channels are somewhat offset by reason of the connecting member (riveted guide bar or I-shaped bar) not being symmetrical. In appellant's structure, as has been stated, the channels are aligned.

At least two of the figures of the drawings of Schiffler's patent 1,085,492, for "Pile-Planking of Rolled Iron," show iron planks or profiles, each of which is approximately Z-shaped. One edge of the profile is grooved in a manner to form a socket of a particular shape. The other edge has a "head" provided with an outwardly flaring shoulder adapted to fit into the socket, and the "head" of one unit inserted into the socket of the next results in an interlocking joint.

In a figure of Schiffler's Canadian patent, which relates to the same art and bears the same title as his United States patent, an H-shaped interlocking member is shown

which forms a joint, or lock, of pile sections in alignment; but there is no recital that the jointures thus formed are made rigid before being driven into the ground.

In the United States Schiffler patent specification, it is said: "In all representations the connecting places of the pile-planking are situated within its symmetrical axis, whereby the work of ramming is facilitated."

All three claims of the Canadian patent call for "sections adapted to form a symmetrical succession of obliquely-inclined walls * * *."

It is thus to be seen that in these three respective patents there are disclosed physical elements which correspond to the elements called for by the claims of appellant, and their functions in the patents seem to be much the same as their functions in the claims, although considerable modification of the patent structure concededly must be had in order to produce the physical structure of appellant.

In the final analysis, the question seems to be whether the making of such modifications constitutes an inventive concept which the law can recognize as patentable.

It is taken for granted that in the construction of cofferdams and the like, it is desirable to have units so shaped and so arranged with reference to each other in the finished work as that a zigzag wall will result. It is quite obvious that there is a limit as to the size of the metallic profiles which practically can be rolled, shipped, and handled. It may be assumed, we think, that the sizes of the profile units shown by the respective parties are the most practical which the art now knows.

It is apparent that each individual unit of Larssen and Schiffler is separately driven into the ground and that whatever jointure or locking of the units is accomplished takes place either as a result of the manner in which each successive unit is set before ramming, or after the ramming has been completed. In any event, neither Larssen nor Schiffler calls for a rigid connection being made *before* ramming, although Larssen, as has been heretofore stated, teaches that two adjoining sheets "are held together by a bar *b* of suitable section, rivited by rivets," or, in an alternative arrangement, that the sheets may be locked in a manner which requires no riveting.

It is the matter of *rigidly connecting* the parts (whether a three-element section or a four-element section, as heretofore described), *before the ramming* or driving operation and the modification of prior art essential to this end, which appellant particularly emphasizes as constituting his inventive concept, and his brief is replete with argument, buttressed by mathematical computations designed to show that his arrangement produces an increase of the "all-important moment of inertia."

It is insisted that when the sheets are individually and separately driven, as in Larssen and Schiffler, torsion is inevitable at the joints, with a resultant weakening of the finished walls, and that appellant's structure obviates this and shifts pressure in a manner which obtains new and improved results such as: "A. Great strength. B. Ease of rolling. C. Absence of torsion. D. Tightness (leak-proof qualities)."

The brief of the Solicitor for the Patent Office points out that "ease of rolling" is specifically mentioned as one of the features of Larssen. Were this not so, it would seem, after all, that this is a matter of manufacture which may not properly be considered upon the issue of patentability under the wording of the claims.

As to the other improved results claimed, the solicitor's brief argues, in accordance with the holding of the tribunals of the Patent Office, that they obviously would result from the modifications of the prior art suggested and hence involve nothing more than the exercise of skill.

There are in the record certain documentary exhibits which seem to have been before the Board of Appeals and were presumably considered by them. The purport of these is to show practical advantages possessed by appellant's structure over prior art, based upon actual use of the respective devices. We have examined these with interest and care.

It is our opinion that the question here is a close one. That appellant has made a decided improvement in this field is obvious. The brief of the solicitor concedes that "appellant's device is novel and useful."

█ Upon the whole record, we are of opinion that this presents one of those cases in which there is a doubt which should be resolved in appellant's favor. The rule is a familiar one and requires no elaborate citation of authorities, of which appellant has listed a large number. The familiar case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523, seems in point, as does the case of

Richmond Screw Anchor Co. v. United States, 275 U. S. 331, 48 S. Ct. 194, 72 L. Ed. 303. Another is that of In re Kirschbraun, 44 F.(2d) 675, 18 C. C. P. A. 735.

We conclude that appellant's application should be allowed.

Accordingly, the decision of the Board of Appeals is reversed.

Reversed.

HATFIELD, Associate Judge, is of opinion that the decision should be affirmed.