Booth, Chief Justice,
delivered the opinion of the court:
This is a patent case now before the court on the issue of accounting. The court on February 3, 1936 (82 C. Cls. 360), filed findings of fact with an opinion, holding the defendant liable as appears from findings this day filed, the case having been remanded to the Commissioner of this court in accord with a stipulation of the parties to take testimony and report to the court the extent of the liability of the Government under the court’s findings and opinion.
The Commissioner’s report under the order of remand was filed February 24, 1937. The defendant filed exceptions thereto on March 24, 1937. The plaintiff did not except.
Defendant’s exceptions are not directed to inaccuracies in figures or computations made by the Commissioner. They do challenge (1) the liability of the Government, insisting upon a free license to use patents 1317609, 1317610, and 1317611; (2) that if the first contention is sustained the total sum stated in Finding 4 as damages for the use of the above patents must be materially reduced; and (3) that the rate of interest allowed is too high.
Finding X, filed by the court February 3, 1936, sets forth the pertinent provisions of a contract entered into between the Marlin Arms Corporation, plaintiff’s assignee, and the United States, covering the use and manufacture of a drop bomb for which an application for a patent was then pending. Subsequently this application matured into patent 1322083 to the plaintiff Barlow on November 18, 1919.
Article 1 of this contract licensed the United States to use in an unrestricted way the above patent upon payment of a 10% royalty of the purchase and cost price of each bomb procured. In addition to the fixed royalty noted, Article 1 empowered the United States to manufacture, or “have manufactured, to use and sell, drop bombs possessing *292 any or all of the features covered by and described in application for letters patent numbered 98737, filed May 20,. 1916, the claims of which application have been allowed in full, and of which the contractor claims to be the sole owner.”
Article 2 of the contract provided as follows:
It is further agreed that in consideration of the-assistance rendered by the Ordnance Department,. United States Army, in the development of the drop bomb referred to herein, and of the royalty to be paid, as set forth in article 1 of this contract, the Ordnance Department, United States Army, shall have the right,, without the payment of any additional sum, to manufacture, to have manufactured, to use and to sell, drop-bombs possessing such improvements of any of the feay tures covered by the application for letters patent specified in article 1 of this contract as may be covered by applications hereafter allowed the contractor by the United States Patent Office. [Italics ours.]
The court held that patents 1317609, 1317610, and 1317611 came within the license contract of April 3, 1917, and that the fixed royalty provided in the same should have been paid to the plaintiff. The defendant renews a contention-that under Articles 2 and 10 of the license agreement the plaintiff is precluded from recovering any sum as and for an infringement of these patents.
Article 2 of the license agreement, which provides that the Army may use improved features of the patented bomb 1322083, carries with it, the defendant contends, a free-license to use patents 1317609, 1317610, and 1317611, not only because the court held that said patents were covered by the license agreement but because it was therein provided that the Army “shall have the right, without the payment of any additional sum”, to use said patents as provided in Article 1.
If the defendant’s construction of Article 2 is sound, the plaintiff under this jurisdictional act placed the defendant in the advantageous position of being able to discontinue the use or manufacture for it of bombs under patent 1322083, the patent covered by Article 1, and resort to the use of vastly improved bombs under the improvement patents without paying any royalty. While manifestly the *293 parties are bound by the license agreement, the construction contended for brings about an exceptional and most unusual agreement.
If the words “without the payment of any additional sum” constitute a conclusive free license to use the improved patents, rather than .a right to use the same without paying a royalty therefor in excess of the 10% provided in Article 1, then defendant’s position is as stated, predicated upon two considerations — first, that the amount of the royalty to be paid under Article 1 was the entire money consideration exacted by the patentee, and second, that the aid furnished by the Ordnance Department of the Army induced the execution of Article 2.
The license agreement was undoubtedly negotiated and executed, and the amount of royalty to be paid thereunder fixed upon the basis of the service rendered the patentee by the Ordnance Department of the Army. The Government officials who made the contract appraised the value of the •contribution made by the Army to the invention, and clearly no attempt was made to extend its value to a free license to use the patents.
Article 1 of the agreement in a definite way grants an unrestricted license to the Government, so far as the allowed application 98737 for patent 1322083 is concerned, and it is .apparent that the parties to the agreement at the time anticipated improvements upon this patented bomb. If patented improvements came into existence, Article 1 would not have •entitled the Government to use the same. Therefore, it was .a matter of foresight, grounded upon necessity, to provide in Article 2 that the Government acquire the same rights in improved patents as it acquired by the terms of Article 1.
The court’s findings disclose that the art involved was open to a variety of improvements. Drop bombs had not developed to the extent of perfection by any means, and ■the license agreement in Article 2 was intended to obligate the patentee to receive no more than a 10% royalty in the event the Government used or caused to be used a bomb •embodying improvements of the one mentioned in Article 1. It is difficult to conceive that either party intended to acquire rights whereby the Government could discontinue *294 to use bombs covered by patent 1322083 to be paid for upon a unit basis, and then after important improvements came into being enjoy the user of the improved ones, which it is demonstrated were most extensive, upon a free license basis.
If a construction of the license agreement contrary to what has been said is to prevail, nothing could interfere with the Government’s' discontinuing use of bombs under Article 1 when comparatively few had been used, and immediately commence the use of the improved ones under Article 2 and pay no more for the same than a nominal sum under Article 1.
Article 10 of the agreement is relied upon as a complete defense to the suit. A number of cases are cited, all of which sustain the rule that where the parties to an express contract agree to submit doubts and disputes arising during the course of contract performance to a designated official and make his decision final, such a decision may not be challenged except for bad faith or such gross error as to warrant an implication of bad faith. The leading case is United States v. Gleason, 175 U. S. 588.
The defense asserted encounters an obstacle due to the fact that plaintiff’s assignee, The Marlin-Rockwell Corporation, did not manufacture a single one of the bombs involved in this item in suit. The question of a free license to manufacture or use the improved patented bombs was not called to the attention of the owners of the patents, and the record is silent as to the fact of knowledge of any kind upon the part of the Marlin-Rockwell Corporation that the bombs were being manufactured and delivered by contractors other than it.
It has been held by the court that the bombs manufactured by the Government infringed plaintiff’s patents; that contractor’s other than the Marlin-Rockwell Corporation were paid for the same, and that this record discloses no evidence that the Government acted upon a claimed free license to do what was done. There was no opportunity for a dispute between the parties as to the meaning of anything in the Marlin-Rockwell Corporation license agreement. The Government disregarded it and proceeded to procure the bombs under another and wholly independ *295 ent contract, and a special jurisdictional act was essential to maintain this suit.
The royalty of 10% fixed by the court’s finding 4 is arrived at by accepting the sum the parties agreed upon in the license contract. We think the royalty thus established is a reasonable one in view of all the facts in the case. Plaintiff is, of course, not contending for a right of recovery under the license contract. Nevertheless, having consented that a royalty of this sum is sufficient consideration for the granting of a license to defendant, plaintiff is not entitled under this item in suit to more.
The final challenge to the award made to plaintiff is confined to two important propositions directly involving a contention for a substantial reduction of the sum reported in the accounting findings. It is first claimed and argued that the date from which interest is to be computed upon the award should be limited to a six-year period, because of the prolonged delays of the plaintiff in presenting testimony and preparing the case for trial.
Predicating an argument upon an inexcusable delay in prosecuting a case involving an interest allowance is manifestly deserving of serious consideration. This case has been pending since 1927, and no evidence was presented until 1930 before the Commissioner of this court to whom the case was referred for the taking of testimony. After 1930, despite the lingering character of the record, it may not be said, as the court’s records disclose, that unusual and unexpected delays obtained.
The difficulty inherent in the defendant’s contention resides in the fact that the only evidence the court has upon which a charge of inexcusable delay may be sustained against the plaintiff is the records of the clerk’s office, which do not disclose with sufficient definiteness the cause of the delay. We have no means of attributing it entirely to the plaintiff and no record of facts upon which to rest a conclusion that in some, if not many, instances, it was unavoidable. However, inasmuch as the findings and opinion must be reported to Congress, we believe the defendant’s request for an additional finding on this subject should be allowed, and the finding is given.
*296 In the Richmond Screw Anchor Company case, 275 U. S. 331, the Supreme Court held that the assignee of a patent is -entitled under the act of 1910 as amended by the act of 1918 to recover for past infringements of patent rights.
In the case of Waite v. United States, 282 U. S. 508, and in the Seaboard Air Line Railway Co. v. United States, 261 U. S. 299, it was said: “Interest at a proper rate is a good measure by which to ascertain the amount so to be added.” This language was used to sustain the rule that under the law the plaintiff was entitled to just compensation for the taking of his property, and just compensation comprehends the allowance of such a sum as will compensate him in full. Therefore, if the payment of just compensation is not made when the property is taken, interest at a proper rate is to be added extending from the date of the taking until payment is made. We have fixed the rate of interest in the findings.
The original findings of fact and opinion of the court filed February 3, 1936, together with additional findings of the court on accounting and the court’s opinion thereon this day filed, will be reported to Congress as the act of March 3,1927, (44 Stat. 1844) provides. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge: and GeeeN, Judge, concur.