DYK, Circuit Judge,
concurring.
I join the court’s per curiam opinion but write separately to express my view that *1368 the court correctly held in NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed.Cir.2005), that the government can only be liable for infringement under section 1498(a) if the same conduct would render a private party liable for infringement under section 271(a).[1]
I
Section 1498(a) provides, in pertinent part:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
In my view, the purpose of section 1498(a) was to make the United States and its contractors liable for “use” of a patented invention that would in similar circumstances constitute direct infringement by a private party.
Patent rights are nothing more than the rights to exclude others. See 35 U.S.C. § 154(a) (2000) (defining the patent grant in terms of its exclusionary powers). In the case of private parties that right is cabined to infringement occurring within the United States. Congress could not have intended to confer broader rights against the United States than against private parties.
The omission of the “within the United States” language (appearing in section 271(a)) from section 1498(a) does not suggest that the government’s liability for infringement is broader than that of private parties. Section 271(a) broadly defines the rights of patent holders against all persons who utilize the patented invention; the language of the section is broad enough to cover the United States. Section 271(a) does not, however, waive the government’s sovereign immunity. That was the purpose of the original section 1498, which was designed to provide a remedy against the government for the infringement described in section 271(a). In other words, unlike section 271(a), section 1498(a) was not designed to define what constitutes infringement (terminology that does not appear in section 1498(a)). Rather, it was intended to define the “owner’s remedy” against the United States, when the United States did not have a license or the “lawful right to use” the patented invention. The question whether the United States had a lawful right to use the invention turned on whether a private party would have had such a right, as the history of section 1498 confirms. The additional purpose of section 1498, as amended in 1918, was to substitute a remedy against the United States for a remedy against private parties working for the government.
Legislation in 1910 first conferred the right to sue the United States for infringement. Pub.L. No. 61-305, 36 Stat. 851 (1910). That legislation was simply designed to waive the sovereign immunity of the United States for preexisting causes of action conferred by the patent statute *1369 (what is now section 271(a)).[2] As the House committee explained, “Our only purpose is to extend the jurisdiction of [the Court of Claims] so that it may entertain suits and award compensation to the owners of patents in cases where the use of the invention by the United States is unauthorized and unlawful ....” H.R.Rep. No. 61-1288, at 3 (1910). In considering the 1910 legislation, Congressman Crumpacker stated that the bill “simply gives consent of the Government to these parties to sue in the Court of Claims for this class of liabilities that it would be liable to suit for if it were not for its sovereignty.” Congressman Currier, who introduced the bill, agreed, explaining that the bill “does not create any liability; it simply gives a remedy upon an existing liability.” 45 Cong. Rec. 8755, 8756 (1910).
The 1918 amendments, Pub.L. No. 65-182, 40 Stat. 704, 705 (1918), similarly confirm that the purpose of the statute was simply to obligate the United States to the same extent as private parties. Congress was concerned that when patented inventions were used or manufactured by others for the United States, suit was being brought against government employees or contractors individually. Thus in 1918, Congress changed the language of the 1910 statute to read:
That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner’s remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
Id. (emphasis added).
Congress intended the 1918 amendment “to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent ... to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation ....”[3] Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343, 48 S.Ct. 194, 72 L.Ed. 303 (1928). Congress in taking this action could hardly have intended that the substituted rights against the United States would be broader than the original rights against the employee or contractor. Indeed, in construing the 1910 legislation (as amended in 1918) to resolve the question whether infringement claims against the government were assignable, the Supreme Court expressly held that the statute
is an attempt to take away from a private citizen his lawful claim for damage to his property by another private person which but for this act he would have against the private wrongdoer.... We must presume that Congress in the pas *1370 sage of the act of 1918 intended to secure to the owner of the patent the exact equivalent of what it was taking away from him.
Id. at 345, 48 S.Ct. 194 (emphasis added). See also Coakwell v. United States, 178 Ct.Cl. 654, 372 F.2d 508, 511 (1967) (“[Section 1498] was not intended to change the basic incidents to which liability would attach for the purposes of seeking comprehensive compensation for the unlicensed use of a patented invention.”).
The “exact equivalent” of section 271(a) limits liability to infringement occurring “within the United States.”[4] Accordingly, the government cannot be responsible for an infringing “use” under section 1498(a) unless the act constitutes a directly infringing “use within the United States” under section 271(a), as Research in Motion correctly held. There is no need to decide the scope of section 1498(c) in this case.
II
Finally, I note that Judge Plager’s interesting discourse on takings jurisprudence completely fails to explain how taking of a property right could possibly have occurred here. Patent rights are creatures of federal statute.[5] They do not exist in the abstract. If, as I urge, the patent holder’s right to sue the government for infringement under 1498(a) is no broader than the rights of the patent holder against private parties under section 271(a), then there can be no taking resulting from the refusal to recognize a greater right against the government. And if, on the other hand, section 1498 is construed to give the patent holder greater rights against the government than against private parties, that right is necessarily defined by both sections 1498(a) and 1498(c) taken together. It makes no sense to say that section 1498(a) confers rights that are “taken” by section 1498(c). Under these circumstances there can be no taking by the government under any interpretation of section 1498, quite apart from the barrier posed by the Supreme Court’s decision in Schillinger v. United States, 155 U.S. 163, 30 Ct.Cl. 480, 15 S.Ct. 85, 39 L.Ed. 108 (1894). There is thus no basis for a Fifth Amendment takings claim in this case even if Schillinger were overruled.

. Under 28 U.S.C. § 1292(d)(2), "the nature and scope of our review are not limited to the certified question but [rather] we are free to consider all questions material to the trial court’s order .... ” United States v. Connolly, 716 F.2d 882, 885 (Fed.Cir.1983).

. The 1910 enactment provided: "That whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the Court of Claims.” Pub.L. No. 61-305, 36 Stat. 851.

. What is now the second paragraph of section 1498(a), originally part of 35 U.S.C. § 94, was added in 1942 to further clarify that actions against United States employees or contractors were barred and replaced by an action against the United States. See Pub.L. No. 77-768, § 6, 56 Stat. 1013, 1014 (1942); S.Rep. No. 77-1640, at 5 (1942).

. There is no occasion here to determine whether claims for infringement liability under 271(f) and 271(g) may be brought in suits against the government.

. Unlike the situation in Ruckelshaus v. Monsanto Co., 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), we deal here with a property right created by federal law.