**DREXLER et al. v. KOZA et al.**

Civ.A. No. 3009.

United States District Court
W. D. Pennsylvania.

Jan. 5, 1950.

Motion to Amend Denied March 10, 1950.

Lockwood, Goldsmith & Galt, Indianapolis, Ind., and Brown, Critchlow & Flick, Pittsburgh, Pa., for plaintiffs.

A. A. Bluestone, Pittsburgh, Pa., for Anderson.

Wm. J. Ruano, Pittsburgh, Pa., for Koza and Invincible Tool Co.

MARIS, Circuit Judge.

This is the final phase of a hard fought patent suit. The patent in suit was held valid and infringed by decree of this court entered November 5, 1945, 62 F.Supp. 473, and affirmed by the Circuit Court of Appeals. 3 Cir., 156 F.2d 370. Certiorari

was denied 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed 664. Rehearing was likewise denied 329 U.S. 831, 67 S.Ct. 367, 91 L.Ed 704. A reference was then made to a master to state an account of profits derived from the infringement. Exceptions by the defendant to the master's report are now before us for disposition.

The principal question raised by the exceptions and the only one having sufficient merit to call for discussion is whether certain of the infringing tools should have been eliminated from the accounting because they were manufactured for and used by the United States. The defendants assert that as to these tools the plaintiff's sole remedy is by a suit against the United States in the Court of Claims under 28 U.S.C.A., § 1498. That section as amended by the Act of May 24, 1949, § 87, 63 Stat. 89, 102, carried into Title 28 the provisions of the Act of June 25, 1910, as amended by the Act of July 1, 1918, without substantial modification, as follows:

"Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

This statute relieves the manufacturer for and vendor to the Government of all liability for patent infringement in a situation in which it is applicable. Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed 303.

The evidence before the master indicates that of the $79,587.18 of gross sales of the infringing tools during the period in question, (1) tools invoiced and shipped to the Government amounted to $11,171.20, (2) tools invoiced to civilians and shipped to the Government amounted to $23,207.84, (3) tools invoiced and shipped to civilians with priority rating amounted to $40,922.04, and (4) tools invoiced and shipped to civilians without rating amounted to $4,286.-10. The defendants urge that the first three categories of sales should be .eliminated from the accounting by virtue of the statute. We agree as to the first two categories but think that the master rightly included the third, since the defendants did not prove that these sales were in fact made to the Government or to Government contractors.

It appears from the evidence that the first two categories of sales, aggregating $34-379.04, involved infringing tools actually delivered to the Government either on invoices to it or to others. Since all of these infringing tools were delivered to the Government their use by the Government is necessarily implied and they, therefore, come within the terms of 28 U.S.C.A. § 1498 as "an invention * * * used * * * by * * * the United States without license of the owner thereof or lawful right to use * * * the same", Bereslavsky v. Standard Oil Co. of New Jersey, D.C., 82 F.Supp. 939, and the fact that some of them were not invoiced directly to the Government is immaterial.

The plaintiff urges that the defendants fail to establish that the Government authorized or consented to the supplying of the infringing tools to fill its orders. Wood v. Atlantic Gulf & Pacific Co., D.C. 296 F. 718, is relied upon by the plaintiff. That case, however, is distinguishable. There the defendant-contractor, in performing a dredging contract for the Government, used an appliance which infringed the patent there in suit. The defendant-contractor had the option of using this or other means for carrying out the contract. The patented appliance was not embodied in any product delivered to the Government, nor was it manufactured for the Government. The court, therefore, held that the defendant-contractor's use of it under the circumstances was not use for the Government. Here the charge of infringement is against the very tools which were delivered to the Government for its use.

Nor does Section 6 of the Royalty Adjustment Act of 1942, 35 U.S.C.A. § 94, help the plaintiff. The material portion of that section is as follows:

" * * * for the purposes of the act of June 25, 1910, as amended (40 Stat. 705;

35 U.S.C. .68), the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government shall be construed as use or manufacture for the United States."

For while the quoted provision undoubtedly applies to 28 U.S.C.A. § 1498, since the latter is but a codification of the Act of 1910 as amended, it is clear that it was intended to broaden, rather than to narrow, the scope of that statute. Bereslavsky v. Standard Oil Co. of New Jersey, D.C. 82 F.Supp. 939, 944, and legislative history referred to therein. In other words, Section 6 of the Royalty Adjustment Act brought within the scope of what is now 28 U.S.C.A. § 1498 the manufacture and use of infringing devices by contractors, subcontractors or other persons for the Government, even though such devices were not actually used by the Government itself, but only if such manufacture or use was with the authorization or consent of the Government. Obviously use by the Government itself implies consent and express consent need not be shown.

We conclude that the master erred in including in the accounting the profits derived from the sales of tools delivered to the Government. The defendants' exceptions are accordingly sustained to that extent. The remaining exceptions, all of which have been considered, are found to be so lacking in merit as to require no discussion here. They are accordingly overruled.

Since the deliveries of infringing tools to the Government constitute 43.197% of the total sales of infringing tools we think that the same proportion of net profit should be deducted from the award of net profit which the master recommended, it being reasonable to assume, in the absence of evidence to the contrary, that the allowable expenses were applicable proportionately. The amount of the award is accordingly reduced to $16,741.41, with interest from December 1, 1948, the date of filing of the master's report. The defendants will pay the costs, including the balance of $1786.50 due the master for his fee and expenses and the costs of the accounting heretofore paid by the plaintiff.

The report of the master is modified to the extent herein indicated and as so modified will be confirmed. A judgment will be entered accordingly.