**SYSTRON-DONNER CORPORATION,**
a Corporation, Plaintiff,

v.

**PALOMAR SCIENTIFIC CORPORA-
TION, a Corporation, et al.,**
**Defendants.**

**No. 41353.**

United States District Court
N. D. California, S. D.

Feb. 16, 1965.

Flehr & Swain, San Francisco, Cal., for plaintiff.

Harvey G. Lowhurst, Palo Alto, Cal., for defendant.

SWEIGERT, District Judge.

This suit for patent infringement and unfair competition was filed March 3, 1963. The patents in suit are No. 3,057,-195, issued October 9, 1962 and No. 3,-074,279, issued January 22, 1963. Defendant answered, denying infringement and unfair competition, and raising the further separate and affirmative defense that in any event all sales of the accused device were for government end use within the meaning of 28 U.S.C. § 1498 and, further, raising the issue of the jurisdiction of this Court to try the issues.

On October 23, 1963, this Court filed its memorandum denying defendant's motion for summary judgment but ordering a separate trial of the issue of government end use.

On January 27, 1964, this Court granted a motion by plaintiff to strike defendant's defense of no jurisdiction and reaffirmed its order for separate trial of the government end use issue.

The case is now before the Court after trial by the Court of that issue.

The statute, in pertinent part, provides as follows:

"Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

"For the purposes of this section, the use or manufacture of án invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government *and with the author-*

*ization or consent of the Government,* shall be construed as use or manufacture *for* the United States. * * * " (Italics added).

Plaintiff introduced evidence which, it contends, shows sales by defendant of the accused product for purposes other than government end use: (1) a sale by the defendant to plaintiff, itself, through G & R Engineering Service, and (2) a sale of five accelerometers by defendant to Micro Gee Products, Inc.

Plaintiff also introduced evidence which, it contends, shows that defendant has attempted to market the product for purposes other than government end use, or at the least, without regard to the end use of the product.

Defendant introduced evidence which, it contends, shows (1) that the alleged sale made by it to plaintiff through G & R was unwittingly made by defendant as the result of a ruse by which plaintiff entrapped defendant into the sale for the purpose of enabling plaintiff to maintain this infringement suit; (2) that the sales to Micro Gee, and all other sales by defendant, were, in fact, for government end use within the meaning of the statute; (3) that in any event the specifically disputed sales are such a small percentage of defendant's total sales that the doctrine of *de minimis* should be applied to those disputed sales; (4) that the nature of the product is such that there is no probability that it will be sold for purposes other than government end use.

Before considering whether defendant has met its burden of proving that all its sales, other than these specifically disputed sales, were in fact made for government end use, we will consider the disputed sales. If either or both of them are held to be such as would entitle plaintiff to proceed in this Court on its infringement issue, the character of defendant's other sales would be immaterial.

## (1) THE G & R SALE

The evidence is to the effect that defendant sold and shipped one acceler-ometer to G & R Engineering Service, St. Louis, Missouri, on February 25, 1963. The evidence shows that this sale was made by defendant without restriction or any inquiry concerning the ultimate end use of the unit.

The details of the transaction are as follows: One Jack Wulfmeyer, a sales manager of plaintiff's accelerometer division, contacted defendant, without disclosing his connection with plaintiff, in an effort to obtain one of defendant's accelerometers. Mr. Wulfmeyer had formerly operated the G & R Engineering Service of St. Louis, Missouri. Using stationery of that firm, Wulfmeyer wrote to defendant asking for a quotation. Receiving no response he telephoned for a quotation. A quotation was forwarded to him, and as a result, a purchase order and a check for $1044.75 were sent to defendant and the accelerometer was shipped as noted above.

Defendant contends that, since this sale was surreptitiously procured by plaintiff for the purpose of this infringement suit, it would be insufficient to support an infringment action, citing Byam v. Bullard, 4 Fed.Cas. p. 934, No. 2,262 (C.C.Mass.1852).

That case was an action at law for infringement in which the Court held that no action on the case could be maintained because there were no damages shown. There were no damages, said the Court, because the plaintiff-patentee had consented to the sale (for 6 cents) of the infringing matches to the patentee's agent. The Court, noting that the case had been submitted on an agreed statement of facts, said that it could not draw any inference from the single sale to plaintiff's agent as to infringement by sales to others in the normal course of defendant's business.

It has more recently been held that, even if no money damages are suffered by a patentee, a single sale by another to the patentee through an agent is, nevertheless, an actionable infringement. Chicago Pneumatic Tool Co. v. Philadelphia Pneumatic Tool Co., 118 F. 852 (C.C.S.D.N.Y.1902). And see

**150**

Hutter v. De Q. Bottle Stopper Co., 128 F. 283, 285 (2d Cir. 1904).

■ The Court, therefore, concludes that for patent infringement purposes this single sale to plaintiff's agent is sufficient to support an infringement action. The question still remains whether it should be considered *de minimis* for the purpose of applying 28 U.S.C. § 1498 in this case. This point will be later considered.

## (2) THE MICRO GEE SALE

The evidence shows that Micro Gee Products, Inc., sent to defendant its purchase order, No. 10815, dated December 12, 1962, for five (5) accelerometers. These units were sold and shipped by defendant to Micro Gee early in 1963. No government contract number appears on the face of this purchase order. The evidence shows that at the time the order was placed Micro Gee had no government contracts, nor any orders from government contractors, for which these accelerometers might have been used. There is evidence, however, that two of these accelerometers were incorporated into acceleration tables manufactured by Micro Gee, and that the tables were eventually shipped by Micro Gee, under subsequently obtained government purchase orders, to government installations to become the property of the United States.

Another of these five (5) accelerometers was incorporated into an acceleration table manufactured by Micro Gee for the Martin Company. This table, with the accelerometer installed thereon, was shipped by Micro Gee to the Martin Company, Denver, Colorado, on a Martin purchase order, No. RC3–513,253, dated May 24, 1963, some months after the shipment of accelerometers from defendant to Micro Gee. This Martin purchase order lists no government contract number, although there is a blank space for it, but a government priority rating of "DX–B8" appears on the face of the Martin order. Defendant contends that this shows intended government end use.

The appearance of a priority rating on the Martin purchase order to Micro Gee does not necessarily establish that the Martin purchase from Micro Gee was for government end use—especially in view of the significant absence of a government contract number in the space provided for it. See: Drexler v. Koza, 88 F.Supp. 298, 299 (W.D.Pa.1950).

In any event, the defendant's accelerometer sale to Micro Gee, which is really the one in issue, was made some months prior to the purchase order upon which Micro Gee acted in ultimately selling its acceleration table to the Martin Company. Meanwhile, as far as defendant was concerned, Micro Gee might well have used the accelerometer for a non-government use.

The Supreme Court has held that the purpose of Section 1498 is "to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture." Richmond Screw Anchor Company v. United States, 275 U.S. 331, 343, 48 S.Ct. 194, 197, 72 L.Ed. 303 (1928).

■ Thus, the purpose of the statute is to free the government from the obstructions raised by involvement of its contractors and subcontractors in patent litigation—not to give exemption from infringement suit to those who manufacture for other than government end use, i. e., use without "authorization or consent" of the government.

To that end all government prime contracts for research and development are required to include an "Authorization and Consent" clause. All supply contracts generally include a limited "Authorization and Consent" clause as "boiler plate." (See: Armed Services Procurement Regulations 9–102, 9–102.1, and 9–102.2, D.Ex. K–1; Authorization and Consent Clause, What Does It Do? 45 J.Pat.Off.Soc'y 784, D.Ex. L–1.)

Defendant's sale to Micro Gee has not, in our opinion, been established as "use or manufacture * * * for the Government and with the authorization or consent of the Government * * *." within the meaning of 28 U.S.C. § 1498—even though some of the accelerometers did eventually become the property of the United States.

## THE DOCTRINE OF DE MINIMIS

The evidence shows that the sale to plaintiff through G & R was for $1050. (The $1044.75 check noted above represents a ½ of 1% discount for cash payment.) The sale to Micro Gee totaled $3500 for five (5) units.

According to the evidence, during the period from October 9, 1962 through June 9, 1964 (just prior to trial) defendant sold 3025 units for $3,040,854. Thus the sale to plaintiff, through G & R, was .033% of the total units sold and .035% of dollar volume for the period. The sale to Micro Gee was .165% of total units and .118% of dollar volume. The combined total of these two transactions comprised .198% of total units and .153% of total dollar volume for the period noted.

The question for the Court is whether the rule of *de minimis* should be applied under these circumstances for the purposes of 28 U.S.C. § 1498.

It has been held that the *de minimis* rule is not applicable for such a purpose in a case in which non-government end use sales constituted only 0.59% of sales in the month prior to trial when there was no evidence that this percentage would remain static during the life of the patent. Northill Co. v. Danforth, 51 F.Supp. 928 (N.D.Cal.1942).

It has also been held that a single sale of eight (8) filter units for $124.03 would not necessarily be *de minimis* unless the defendant could affirmatively establish "that the non-governmental sale was so unusual that it will not be repeated in quantities not de minimis, that it has no intention to sell the article in question to non-governmental buyers, and that it has not sought such sales.

. . ." For that reason the Court ordered a separate trial of the issue. J. & G. Development Company v. All-Tronics, Inc., 198 F.Supp. 392, 395 (E.D.N.Y. 1961).

It may be inferred that this single sale was ultimately held not *de minimis* since the Court later proceeded to the infringement issue and held the patent invalid. Id., 213 F.Supp. 723, aff'd 326 F.2d 204 (2d Cir. 1963).

In Neff Instrument Corporation v. Cohu Electronics, Inc., 269 F.2d 668 (9th Cir. 1959) the Court reviewed a summary judgment granted, in the lower court, upon the basis that only one infringing device out of thirty-three was not for government end use. In reversing the lower court, the Court of Appeals said at p. 672: "Recognizing that the sale of one Model 114A amplifier to Ramo-Wooldridge, and its use by that company, was clearly established by the evidence below, the district court found there was such a sale, but that it was *de minimis*. In doing this, the court below refused to apply the same rule measuring *de minimis* to the patent defense arising from 28 USC § 1498, as this Court has heretofore applied to the measurement of *de minimis* in patent infringement. * * *"

The Court went on to note that the manufacture of even a single machine makes the manufacturer liable for infringement; that one sale is also sufficient; and that even the threat to use patented subject matter might give rise to a cause of action.

While the discussion in the Neff case may be *obiter dictum,* there is a clear inference that the rule of *de minimis* must be strictly applied. The non-government sale must be "so unusual that it will not be repeated in quantities not de minimis," and it must be shown that defendant "has no intention to sell the article in question to non-government buyers, and that it has not sought such sales." J. & G. Development Company v. All-Tronics, Inc., supra, 198 F.Supp. at p. 395.

The surrounding circumstances of defendant's sales, as shown by the evidence in this case, are as follows: The device in question is a servo linear accelerometer which, according to the defendant, has no market except the U. S. Government. However, the plaintiff manufactures similar devices and, according to the evidence, sells them in the commercial market (non-government end use).

Although defendant contends that its accelerometers are far more rugged, somewhat differently designed, cost substantially more than plaintiff's devices, and are not really competitive, there is evidence that defendant has competed directly with plaintiff in the commercial market. Plaintiff introduced evidence of a quotation made by defendant as late as April 8, 1963 to Lear-Siegler, Inc., for twenty-four (24) accelerometers at $695 each, for use on automatic landing systems for Caravelle commercial jet transports.

Although defendant has indicated that it no longer solicits non-government end use business, the evidence shows that both prior to October 9, 1962, the date of issuance of one of plaintiff's patents, and subsequently, defendant accepted purchase orders without regard to government end use. Only after this suit was brought did defendant notify its personnel that no non-government orders were to be solicited or taken.

There is further evidence of commercial activity on the part of defendant in arranging for publication of two articles in a trade magazine *Control Engineering*. The evidence also shows that one of defendant's engineers was present in the display booth of defendant's sales representatives at a trade show in Huntsville, Alabama.

 It is the opinion of the Court that defendant has not established the requisite factors for application of *de minimis* despite the sale of only a relatively few accelerometers for non-government use. The Court cannot say that over the life of these recently issued patents, defendant will not find and exploit a greater commercial market than now exists.

For the foregoing reasons the Court finds and concludes that judgment should be for the plaintiff and against the defendant on the separate issue tried. Plaintiff will prepare, serve and present findings, conclusions and a judgment accordingly. Upon further order of the Court, or upon motion of either party, the case will proceed to pre-trial and trial upon the merits.

In view of the Court's decision, plaintiff's motion to reopen the trial on separate issue is also denied.