**Edward T. MOLINARO and Anthony P. Catanzaro**

v.

**WATKINS–JOHNSON CEI DIVISION.**

**Civ. A. No. 72–589.**

United States District Court,
D. Maryland.

April 9, 1973.

See also, D.C., 359 F.Supp. 474.

Edward T. Molinaro, Anthony P. Catanzaro, plaintiffs, in pro. per.

David F. Albright and Semmes, Bowen & Semmes, Baltimore, Md. (Francis D. Thomas, Jr., and Bacon & Thomas, Washington, D. C., Aldo J. Test, and Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., of counsel), for defendant.

NORTHROP, Chief Judge.

Plaintiffs, Edward T. Molinaro and Anthony P. Catanzaro, are representing themselves in this patent case, and claim that certain devices manufactured by Watkins-Johnson CEI Division—the MD–104 Auto-Scan Receiver and a modification kit for field conversion of any RS–111–1B Series Receiving System into an RS–111–1B–17—infringe Molinaro's Patent No. 2,906,875 for a Station Sampling Radio. Defendant challenges the jurisdiction of this Court and also states in its answer that the patent is invalid and not infringed.

Defendant's brief offers a detailed description of the Molinaro Station Sampling Radio and, to some extent, of the accused structure. With respect to the pending motions, however, there is no need for such a detailed discussion of the devices in question. For the purposes of its motion for summary judgment, however, defendant does assume that when the Autoscan MD–104 is connected to and operated with the CEI Type RS–111–1B–17 receiving system, the resulting combination includes the features and operates as the Molinaro Station Sampling Radio. (For the record, however, defendant was careful to point out that even in combination, there is no infringement.)

On the basis of its answers to plaintiffs' interrogatories and the affidavits of its employee, John S. Wilkins, Manager of Manufacturing of Watkins-Johnson CEI Division, defendant alleges that it manufactured and delivered twenty of the accused devices. Apparently two were sold to foreign governments, one to Israel and another to Switzerland. Eighteen, on the other hand, were delivered to the United States Government, but defendant refuses to indicate which agency received the devices, and claims that this information is classified. Three additional MD–104's were manufactured in anticipation of additional orders by the United States but have not yet been sold.

Another factor which the defendant introduces into the equation is that unless the two components of defendant's system are connected, there is no infringement. With regard to the items not sold to the United States, therefore, defendant claims that it never performed the requisite connection within the United States, for those devices were shipped separately and only assembled in the foreign country.

Defendant moves for a summary judgment on two grounds. First, it contends that 28 U.S.C. § 1498(a) is applicable to the structures sold to the United States Government, and plaintiffs' remedy, if any, lies *exclusively* in an action in the Court of Claims. Thus the District Court is without jurisdiction. As to the devices sold abroad, defendant cites Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), for the proposition that there is no infringement as a matter of law.

■ Initially it is necessary to state some fundamental rules applicable to this motion under Fed.R.Civ.P. 56. The purpose of a summary judgment is to prevent the unnecessary trial which would result if there are no genuine issues as to material facts. *See* 6 J. Moore, Moore's Federal Practice ¶ 56.- 15 [1.–0], at 2281 (2d ed. 1971). It is settled that if there is a real dispute as to material facts, a summary judgment cannot be allowed. Phoenix Sav. and Loan, Inc. v. Aetna Cas. and Sur. Co., 381 F.2d 245 (4th Cir. 1967); Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955); Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951); Stevens v. Howard D. Johnson Co., 181 F.2d 390 (4th Cir. 1950); Batchelor v. Legg & Co., 52 F.R.D. 545 (D.Md.1971); Hutchens v. Janssen, 41 F.R.D. 287 (W.D.Va.1966). An analysis of this Circuit's decisions on the principles concerning the granting or denial of a summary judgment indicates that a very strict standard must be met before a summary judgment can be granted. Not only must there not be a dispute as to the evidentiary facts, but there cannot be a disagreement as to the inferences or conclusions to be drawn therefrom. Phoenix Sav. and Loan, Inc. v. Aetna Cas. and Sur. Co., *supra*, 381 F.2d at 249; American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965). Further the party opposing the motion is entitled to all the favorable inferences to be drawn from the evidence. Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967). Lastly, the party which moves for summary judgment has the burden of establishing the absence of any genuine issue as to all the material facts. 6 J. Moore, *supra*, ¶ 56.15 [3], at 2335.

■■ Having set forth the rule as to summary judgment, the Court must now turn to the defendant's first contention. The case law is consistent with defendant's position that when a patented invention is manufactured for the United States, the plaintiffs' sole remedy is against the United States in the Court of Claims. Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell, 399 F.2d 913 (5th Cir. 1968); Stelma, Inc. v. Bridge Elec. Co., 300 F.2d 761 (3d Cir. 1962); Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148 (4th Cir. 1949), aff'g 82 F.Supp. 939 (D.Md.1949). When considering this issue of sole, ultimate use by the United States on a motion for summary judgment, the law is clear that there must be no real dispute as to the fact of sole, ultimate use. Evans v. McDonnell Aircraft Corp., 395 F.2d 359 (8th Cir. 1968); J. & G. Dev. Co. v. All-Tronics, Inc., 198 F.Supp. 392 (E.D.N.Y.1961).

A further consideration which this Court must face is the troubling aspect of section 1498(a) which seems to indicate that "use or manufacture for the United States" requires "authorization or consent of the government" of the patent infringement. The cases are not clear on exactly what this wording means. Defendant would have this Court believe that mere acceptance of the accused article by the United States shows "authorization and consent," whereas the plaintiffs argue that this fact must be expressly shown. Defendant cites language to support its position in Bereslavsky v. Esso Standard Oil Co., supra, quoting a Bulletin of the Judge Advocate General which appears to give weight to its contention. The Stelma case, also cited by defendant, involved a case where the Government's authorization and consent was implied from the fact that the United States accepted delivery under a contract which contained an "authorization and consent clause." Later cases, however, imply that there must be some showing of "authorization and consent" to fall under section 1498. See Evans v. McDonnell Aircraft Corp.,

supra, 395 F.2d at 362; Systron-Donner Corp. v. Palomar Scientific Corp., 239 F.Supp. 148, 150 (N.D.Cal.1965); Roberts v. Herbert Cooper Co., 236 F.Supp. 428 (M.D.Pa.1959); Consolidated Vacuum Corp. v. Machine Dynamics, Inc., 230 F.Supp. 70, 72–73 (S.D.Cal.1964). Consent can be implied, but there is authority that this is possible only where the Government contract requirement cannot be met without infringement. Consolidated Vacuum Corp. v. Machine Dynamics, Inc., supra, at 72, interpreting Bereslavsky v. Esso Standard Oil Co., supra.

■ Despite the apparent ambiguity as to the requirements of "authorization and consent," this Court is bound by the Fourth Circuit's rule on the subject. It is true that the Bereslavsky case dates back to 1949, but this Court has been unable to find a more recent Fourth Circuit decision. In Bereslavsky, the Court stated that to limit the application of § 1498 to "cases where officers of the government intentionally contract for patent infringement would in very large measure defeat its purpose." 175 F.2d at 150. The following language was adopted by the Court as a definition of "authorization or consent."

> " 'Authorization or consent' on the part of the Government may be given in many ways other than by letter or other direct form of communication. * * * the specifications and the contract may be silent with respect to the use of patented inventions. In such event, *if the invention for which claim is made is incorporated in the articles delivered to the United States under the terms of the contract, the acceptance of such articles as complying with the terms of the contract, constitutes 'consent' by the Government* sufficient to bring the articles within the provisions of the Act of June 25, 1910, as amended, supra, and forms the basis for the transfer of jurisdiction over any claim for compensation therefor from the District Court to the Court of Claims, * * *." [175 F.2d at 151]

Later cases have followed *Bereslavsky,* and have interpreted it to mean that where the article is both manufactured for and used by the government, § 1498 is applicable and plaintiffs' exclusive remedy is in the Court of Claims. John J. McMullen Associates, Inc. v. State Bd. of Higher Educ., 268 F.Supp. 735 (D.Ore. 1967); Drexler v. Koza, 88 F.Supp. 298 (W.D.Pa.1950).

When the defendant's motion for summary judgment was initially argued at a hearing held on November 3, 1972, the defendant relied exclusively on the affidavit of its employee, John S. Wilburn, to establish the fact that eighteen devices were sold to the United States. Plaintiffs challenged this claim with a counter-affidavit to the effect that they conducted a survey of several agencies in an unsuccessful attempt to determine who had purchased the devices, and further they denied that "authorization and consent" had in fact been given by the United States. With the case in such a posture, this Court could only conclude that a conflict as to a material issue of fact definitely existed and that unless there was a more concrete showing of "authorization and consent" and of "use and manufacture for" the United States, a summary judgment could not be granted. The defendant, however, strenuously maintained that it could not divulge the identity of the agency since that information was classified.

Subsequently, a representative of the purchasing agency contacted the Court and stated that the information withheld by the defendant was in fact classified and could not be divulged. This official was questioned at length by this Court in Chambers, and it was satisfactorily established that the United States did enter into a contract with Watkins-Johnson CEI Division to develop and manufacture the device at issue for the United States. *Cf.* United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). This contract contained a standard "authorization and consent" clause.[1] It was further determined that

---

1. The Government contract with Watkins-Johnson CEI Division contained the following provisions:

### AUTHORIZATION AND CONSENT (MAR. 1964)

The Government hereby gives its authorization and consent (without prejudice to any rights of indemnification) for all use and manufacture, in the performance of this contract or any part hereof or any amendment hereto or any subcontractor hereunder (including any lower-tier subcontract), of any invention described in and covered by a patent of the United States (i) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract, or (ii) utilized in the machinery, tools, or methods the use of which necessarily results from compliance by the Contractor or the using subcontractor with (a) specifications or written provisions now or hereafter forming a part of this contract, or (b) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clauses, if any, included in this contract or any subcontract hereunder (including any low-er-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

### PATENT INDEMNITY (SEPT. 1964)

If the amount of this contract is in excess of $5,000, the Contractor shall indemnify the Government and its officers, agents, and employees against liability, including costs, for infringement of any United States letters patent (except letters patent issued upon an application which is now or may hereafter be kept secret or otherwise withheld from issue by order of the Government) arising out of the manufacture or delivery of supplies or out of construction, alteration, modification, or repair of real property (hereinafter referred to as "construction work") under this contract, or out of the use or disposal by or for the account of the Government of such supplies or construction work. The foregoing indemnity shall not apply unless the Contractor shall have been informed as soon as practicable by the Government of the suit or action alleging such infringement, and shall have been given such opportunity as is afforded by applicable laws, rules, or regulations to participate in the defense thereof; and further, such indemnity

the defendant worked with certain representatives of the purchasing agency in the research and development phase and that the initial sale of the device was made to the United States. The Court, like the defendant, furthermore, is not at liberty to give the plaintiffs the name of the purchasing agency due to the security classification upon that information.

■ In light of the information revealed to the Court by the United States, it is apparent that the United States accepted delivery of eighteen of the alleged infringing devices under a contract containing an "authorization and consent" clause, and thus the United States accepted liability for any patent infringement, but retained the right to seek indemnification against the manufacturer. This Court, therefore, is satisfied that there can be no real dispute as to the facts surrounding "use and manufacture . by or for the United States" and "authorization or consent," and finds that the plaintiffs' *exclusive* remedy with respect to the eighteen devices purchased by the United States is in the Court of Claims. Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343–344, 48 S.Ct. 194, 72 L.Ed. 303 (1928) (exclusive remedy in Court of Claims) ; Stelma, Inc. v. Bridge Elec. Co., *supra*, 300 F.2d at 762 (acceptance of devices by the United States under a contract with an "authorization and consent clause" establishes "consent") ; Bereslavsky v. Esso Standard Oil Co., *supra*, 175 F.2d at 149–150 (acceptance of devices by United States under a contract constitutes "consent" ; exclusive remedy in Court of Claims).

■ The fact that two devices were not sold to the United States but to for-

eign governments makes only a partial summary judgment appropriate in this case ; for where the affidavits and answers to interrogatories reveal sales other than to the United States Government, a summary judgment is not in order, for there may be jurisdiction in the District Court. Evans v. McDonnel Aircraft Corp., *supra*; Neff Instrument Corp. v. Cohu Elec., Inc., 269 F.2d 668 (9th Cir. 1959) ; Systron-Donner Corp. v. Palomar Scientific Corp., *supra*. Where, however, part of the infringing devices are sold to the United States and some to other parties, a partial summary judgment is in order as to the governmental sales. *See* Pierce v. Submarine Signal Co., 25 F.Supp. 862 (D.Mass. 1939).

Subsequent to this Court's oral opinion on defendant's motion for summary judgment, the plaintiffs filed several memoranda objecting to the granting of a partial summary judgment in this case and arguing that since the case must proceed to trial on the two devices sold to foreign governments, judicial economy demands that this Court dispose of the entire case rather than require plaintiffs to bring an action in the Court of Claims. They further contended that section 1498 does not operate to divest the District Court of jurisdiction, but rather, creates an affirmative defense and thus summary judgment is inappropriate since there must be a trial on the merits. In support of this proposition, plaintiffs rely on J. & G. Dev. Co. v. All-Tronics, Inc., *supra*, and Tinnerman Prod., Inc. v. Adel Precision Prod. Corp., 62 F.Supp. 348 (S.D.W.Va.1945).

■ Whether one sees § 1498 as an affirmative defense or as a jurisdictional matter, it is fairly well-settled that inasmuch as "use and manufacture by or

shall not apply to : (i) an infringement resulting from compliance with specific written instructions of the Contracting Officer directing a change in the supplies to be delivered or in the materials or equipment to be used, or directing a manner of performance of the contract not normally used by the Contractor ; (ii) an infringement resulting from addition to, or change in, such

supplies or components furnished or construction work performed which addition or change was made subsequent to delivery or performance by the Contractor ; or (iii) a claimed infringement which is settled without the consent of the Contractor, unless required by final decree of a court of competent jurisdiction.

for the United States" is established, the District Court cannot grant a remedy against the defendant manufacturer, for the only relief is in the Court of Claims against the United States. There are important policy reasons for such a procedure, and they have been enumerated clearly by the United States Supreme Court.

> The intention and purpose of Congress in the act of 1918 [the predecessor of § 1498] was to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements to investors or the owners or assignees of patents. The letter of the Assistant Secretary of the Navy, upon which the act of 1918 was passed, leaves no doubt that this was the occasion for it. To accomplish this governmental purpose, Congress exercised the power to take away the right of the owner of the patent to recover from the contractor for infringements. This is not a case of a mere declared immunity of the government from liability for its own torts. It is an attempt to take away from a private citizen his lawful claim for damage to his property by another private person, which but for this act he would have against the private wrongdoer. [275 U.S. 345, 48 S.Ct. 197].

Where the District Court is powerless to provide a remedy, plaintiffs' argument of judicial economy is of no avail.

Plaintiffs next rely on those cases calling section 1498 an affirmative defense rather than a jurisdictional matter to argue that summary judgment is not appropriate and that a trial is necessary on the issue of the section 1498 defense. This stance would be procedurally correct if the defendant had moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The instant motion, however, is one for summary judgment based on affidavits and the representations of the purchasing agency. It is unfortunate that the identity of the purchasing agency cannot be revealed to the plaintiffs and that they cannot cross-examine the represent-ative of the purchasing agency, but valid and important governmental interests preclude this. The Court, in its questioning of the agency representative was sure to protect the plaintiffs' interests in ascertaining the existence of "authorization and consent" by the United States. Since the Court is fully satisfied that there can be no real dispute as to "use and manufacture by or for the United States" and as to "authorization and consent," a partial summary judgment is appropriate and a trial is not necessary to determine the applicability of section 1498. Furthermore, since plaintiffs can maintain a suit against the United States in the Court of Claims, they are not left without a remedy as to these devices. When plaintiffs bring their action in the Court of Claims, this Court can coordinate with the Court of Claims concerning the details of this purchase by the United States.

The cases cited by the plaintiffs do not hold that summary judgment is inappropriate where there is no dispute as to material issues of fact. The *J. & G. Development Company* and the *Tinnerman Products* cases view section 1498 as an affirmative defense and indicate that it is a matter that should be disposed of initially so as not to lead to a duplication of effort in the District Court and the Court of Claims. Such an analysis supports the conclusion that partial summary judgment is proper where the facts show that the defense is established. *See J. & G. Dev. Co. v. All-Tronics, Inc., supra,* 198 F.Supp. at 394–395; Tinnerman Prod. v. Adel Precision Prod. Corp., *supra,* 62 F.Supp. at 351.

 Lastly, the plaintiffs argue that if an indemnification clause is present in the contract between the government and the defendant, there can be no "authorization and consent." This position is also without merit, for the indemnification clause is a device to protect the government in its acceptance of liability for patent infringement. If the Court of Claims finds the United States liable for the infringement, then the Government can recover its loss from the de-

fendant. Indemnification, therefore, rather than being inconsistent with "authorization and consent" is totally consistent with it.

The motion for summary judgment is, therefore, granted as to the devices sold to the United States.

Since defendant has withdrawn its motion for summary judgment as to the accused devices sold to foreign governments, decision on this matter is no longer necessary.

 Plaintiffs' untimely demand for a jury trial is denied for they have failed to make a demand within ten days after service of the last pleading directed at an issue triable of right by a jury. In this case the last such pleading was the defendant's answer which was served on August 29, 1972. The plaintiffs' demand was served September 30, 1972, well after the time limit set in Rule 38 (b). Plaintiffs have, therefore, waived their right to a jury trial. Fed.R.Civ.P. 38(d). Plaintiffs argue that "Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment" is a pleading directed at an issue triable of right by a jury, but their contention is without merit.