Lorraine Joan **RYPKEMA**,
Plaintiff,

v.

H. Pink **BOWERS** et al.,
Defendants.

Civ. A. No. 73–6–M.

United States District Court,
N. D. West Virginia,
Elkins Division.

Dec. 18, 1974.

On Denial of Certification Feb. 21, 1975.

Philip J. Hirschkop, Alexandria, Va., Richard L. Douglas, Martinsburg, W. Va., for plaintiff.

Gordon Billheimer, Montgomery, W. Va., Robert M. Steptoe, Martinsburg, W Va., for defendant.

MAXWELL, Chief Judge.

This action, brought pursuant to 42 U.S.C. §§ 1983 and 1985, involves Ms. Lorraine Joan Rypkema, a non-tenured public high school teacher, who seeks declaratory and injunctive relief together with damages as a result of the action of the defendants in failing to rehire her as a teacher within the school system of Morgan County, West Virginia, for the school year 1973–1974. Named as defendants are Mr. H. Pink Bowers, Superintendent of Schools of Morgan County, and the five members of the Morgan County Board of Education. Each is sued both individually and in his or her representative capacity. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1332, 1343, and 2201 et seq. Both plaintiff and defendants have now moved the Court to grant summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, claiming that from the pleadings, depositions and exhibits now before the Court there is no genuine issue as to any material fact and that each is therefore entitled to judgment as a matter of law.

At the outset, it must be noted that cross motions for Summary Judgment alone do not as such establish that either of the movants is entitled to relief. Both motions must be denied if there exists a genuine issue of fact or inference of fact. American Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214 (4th Cir. 1965). In addition, summary judgment is not proper where inquiry into the facts is deemed desirable by the Court to clarify the application of the law. Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955); Molinaro v. Watkins-Johnson CEI Division, 359 F.Supp. 467 (D. Md.1973); Batchelor v. Legg & Co., 55 F.R.D. 557 (D.Md.1972).

With this principal foremost, the basis of this litigation can be considered. During the school years 1971–1972 and 1972–1973, plaintiff was employed as a teacher of English and Speech at Berkeley Springs High School, Berkeley Springs, Morgan County, West Virginia. At some time during the fall term of the 1971–1972 school year, it is contended that the students in one of the plaintiff's classes entered her classroom to find the letters "F. U. C. K." printed on the blackboard. These letters were allegedly used by plaintiff in the ensuing class period as a part of a lesson on the abuse of language. At the end of the 1971–1972 school year, plaintiff's teaching contract was renewed for the following year.

During this next academic year, it appears that a student inquired of plaintiff about the possibility of using a publication titled the little red school book as a classroom discussion tool. Plaintiff discussed this with her principal and we are led to believe was given the impression, at least, that he disapproved of the use of this particular book in class. Later in the fall term, plaintiff allegedly made available to the students in most of her classes a nationally circulated book list with several paperback selections available to the students at a dis-count rate. One of the selections on this list, part of a group of books denominated as "Teacher Selections," we are informed, was the little red school book. Twenty-eight of plaintiff's students allegedly placed orders for the little red school book. The books apparently were delivered and distributed to the students in early February 1973.

Shortly thereafter, it appears that a furor arose in the community concerning the ordering of this particular book. As a result we are informed that a series of events occurred. First, Plaintiff met with her principal and defendant Bowers sometime in March 1973, to discuss the matter, and subsequently met with the Morgan County Board of Education. At the latter meeting, plaintiff was accompanied by counsel. Secondly, the Board of Education met later in the month of April, at which time public discussion was had concerning plaintiff's position. Next, following the public portion of this meeting, the Board retired to executive session and voted not to renew plaintiff's contract.

It is plaintiff's contention that her non-retention was based on her use of the word "fuck" in one of her lesson plans and on her mention of the little red school book to her classes. It is the apparent response of the defendants that the plaintiff was not rehired because she lacked sufficient judgment to fulfill her duties in a suitable manner. This lack of judgment, defendants contend, manifested itself in these two incidents and, it is subtly suggested, perhaps in other events. Plaintiff replies that her actions in both instances were protected by the first amendment to the Constitution of the United States, and that her non-retention on those grounds denied her substantive rights "as a citizen and as a teacher."

When presented with a substantive question, as raised here, the foremost responsibility imposed on a court is to determine the precise reasons for the non-retention. Asserted reasons or ap-

parent reasons are not adequate. The true reasons must be searched out and identified without doubt. This is a determination that cannot be made at this early, discovery stage of the litigation. This quest for the factual underpinnings of the constitutional questions presented in this civil action requires a trial.

Though discovery has been rather extensive, this case is not one to be decided from the cold and sterile, perhaps incomplete, pages of the discovery depositions. Involved here is an apparent basic conflict between the substantive rights of an individual, a teacher, and the equally essential interests of the people, including the taxpayers, students and parents of Morgan County, who are that teacher's ultimate employer, represented here by the defendants.

Discovery depositions are by their very nature a means of exploring areas of the opposition's factual storehouse of information. The goals are laudable and vital to the efficient and effective functioning of our present day court system. Discovery procedures are not a complete substitute for trial of issues in all cases. Discovery depositions are properly designed by counsel to develop, by well thought through questions, a response not inconsistent with his client's theory. Never would knowledgeable counsel explore a known area of danger to his client's theory of litigation. Conversely, never would informed counsel for the party being deposed develop, by examination of his client or his client's witnesses, matters that are substantial defensive replies, dispositive of the ultimate issues presented. It is a truism of the profession that counsel for a deposed party rarely examines his client, or his client's witnesses, in a discovery deposition. A review of the depositions here indicates such is the trial strategy of defense counsel. It is not a subversion of the discovery process not to volunteer under such circumstances.

On the other hand, the discovery techniques of capable counsel can serve to divert the matters in issue before the court and can cast an impression that is not complete. A court must be certain that the justiciable issues before it are totally developed, before a reasoned judgment is rendered, otherwise that judgment is robbed of its purpose.

The rapid development of the constitutional, statutory and decisional law in this particular area of relationship between the public and their educational endeavors places an added responsibility upon the courts and upon the parties to this type of civil action. The dearth of case law, dealing with the fundamental issues raised here, assures that every decision of every court will have immediate precedential value in the refinement of the relative rights and responsibilities of parties who find themselves faced with similar problems. To decide such a case without a complete and adequate assessment of the facts would be an injustice not only to the parties here, but also to the orderly development of the rule of law.

In the context of guidelines controlling motions for Summary Judgment, and the inability of discovery depositions to always furnish the mode of sufficient enlightenment of the litigation issues, it may be noted here, for example, that exploring the educational backgrounds and literary tastes of the defendants may be irrelevant. Whether the public of a particular locality should elect officials to oversee their school system who prefer to read little or nothing at all, considered by some to be of literary merit, may have little to do with whether the acts of these elected officials are violative of a teacher-employee's constitutional rights. Likewise, there has been extensive inquiry into the public activities of the plaintiff and others, of Morgan County, who are not parties here. The first amendment, of course, gives everyone the right to petition their government for redress and to express their views on matters of public concern. But the mere fact that the

plaintiff may have chosen to solicit support for her position, or to seek election to a position on the Morgan County Board of Education, or to grant an interview to the national scholastic magazine may have no bearing on the alleged constitutional deprivation urged against the defendants here. What, if any, effect these and many other things which develop on discovery may have on the assessment of damages must be determined subsequent to a finding on the primary issues of liability. These areas of inquiry may also be appropriately considered at trial so that the real constitutional issues of this action may be first identified and then resolved.

As this case moves towards trial, all parties involved and counsel must keep sight of the primary area that is involved here, namely, the non-retention of Ms. Lorraine Joan Rypkema as an English teacher in the public school system of Morgan County, West Virginia. There are certain issues which must be met in order to resolve this particular controversy. At the substantive level, we must determine the exact facts and circumstances surrounding plaintiff's non-retention, and if, in light of those facts and circumstances the defendants' actions deprived plaintiff of some right, privilege or immunity secured to her by the constitution or laws of the United States.

■ On the procedural level, Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972), provides a clear statement of the issues which must be resolved. Since plaintiff here can claim no legitimate expectancy of continuing employment under state law, W.Va.Code Ann. § 18A–2–2 (1971 repl. vol.), it must be determined whether her non-retention was based upon charges and allegations which stigmatized her so as to deprive her of freedom to seek further employment in her professional field, thus depriving her of "liberty" within the purview of the

fourteenth amendment. This obviously is an issue for trial. A grant of summary judgment here would be akin, it is believed, to the action taken in *Roth, supra,* by the district court. Such was determined improper.

For the reasons above-stated, an order will follow denying plaintiff's motion for summary judgment and also denying defendants' cross motion for summary judgment.

■ Presently pending are motions by defendants to dismiss in part the complaint for failure to state a claim cognizable under the Civil Rights Act of 1871, and by defendant members of the Morgan County Board of Education for summary judgment based upon the theory of qualified immunity. These are matters which can more properly be dealt with after a more complete exploration of the factual matters of this civil action. Therefore, an order will follow denying defendants' motion to dismiss as well as the defendant board members' motion for summary judgment. This action by the Court is without prejudice to the matters urged being raised and considered later after this action has been further developed.

## MEMORANDUM ORDER

### ON MOTION FOR CERTIFICATION

Plaintiff seeks to obtain an interlocutory appeal from this Court's order of December 18, 1974. She pursues this course by Motion under the provisions of Title 28 U.S.C. § 1292(b) (1970).

In support of her Motion, it is alleged:

"1. The aforestated order of the Court denied cross-motions for summary judgment tendered by both parties. The parties have agreed that there are no factual matters in dispute and that what remains are questions of law.

2. By its order of December 18, 1974, the Court declined to rule upon ques-

tions of law outstanding in the above-captioned matter.

3. The questions of law raised by the parties are controlling questions to which there is substantial ground for difference of opinion. Further, an immediate appeal from the order complained of may materially advance the ultimate termination of the litigation by virtue of the resultant decision as to whether or not liability on the part of the defendants exists."

It would appear from these contentions that Plaintiff misperceives the import of the Court's order of December 18, 1974, and 28 U.S.C. § 1292 (1970).

The order from which an early appeal is sought denied cross motions for summary judgment filed in this case by the respective parties. As the Court noted in its opinion filed with that order, the presence of such cross motions for summary judgment does not, as such, establish that either of the movants is entitled to relief. Such motions must be denied if there is a genuine issue of fact or if there is an inference of fact. American Fidelity & Casualty Co. v. London & Edinburgh Insurance Co., 354 F.2d 214 (4th Cir. 1965). Summary judgment is not proper where inquiry into the facts is deemed desirable by the Court to clarify application of the law. Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955).

The Court's December 18, 1974, order, as the opinion filed therewith reflects, was based upon a determination that definite issues of fact as well as factual inferences remain to be developed and subsequently resolved. In addition, the Court expressed its observation and belief that the present factual record of this case, consisting largely of discovery depositions, was inadequate to support a decision on the merits of Plaintiff's constitutional claim. "Where the

record is such that the Court is in doubt, it has discretion to postpone consideration of a summary judgment until after a hearing on the merits. . . . Particularly is this true where the trial court is called upon to decide a constitutional question on summary judgment on a potentially inadequate factual presentation." Williams v. Howard Johnson's, Inc., 323 F.2d 102, 105 (4th Cir. 1963).

As to Plaintiff's procedural due process claim, the Court found summary judgment improper on the basis of the record before it. The Court believes that under the holding of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972), such a conclusion is unavoidable in this case since the factual record is incomplete.

While Plaintiff states that the parties have agreed that there are no factual matters in dispute and that what are left are questions of law, the record of this case contains no stipulations or agreed statements of facts sufficient to decide this action. There is nothing in the record to indicate that any such "agreement" has ever been reached, unless such an agreement may be implied from the fact of the filing of cross summary judgment motions.

Under 28 U.S.C. § 1292(b) (1970), it is proper for a district judge to certify an order for review only if "such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."

As the Court has noted above, the order of December 18, 1974, did not involve a controlling question of law in this case. The complained of order merely decided there were factual issues

# 570

remaining for resolution and they require a trial. The controlling questions of law were not reached and therefore not decided.

In Switzerland Cheese Association, Inc., v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), the United States Supreme Court held that an order denying summary judgment in a suit seeking permanent injunctive relief was not "interlocutory" and therefore not appealable under 28 U.S.C. § 1292(a)(1). While the case holding is inapposite here, certain language from the Court's opinion seems apropos. "[T]he denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing— that the case should go to trial." *Id.* at 25, 87 S.Ct. at 175. That is the extent of this Court's order of December 18, 1974.

While the Court believes that this principle alone would be sufficient to deny Plaintiff's motion, there is one other compelling reason. This action was commenced September 10, 1973, over one year and four months ago. At the time the cross motions for summary judgment were ruled upon, a date was set for submission of a pretrial order and to receive suggestions from counsel as to a trial date. Plaintiff's appeal at this stage of the litigation, and given the state of discovery that has been completed, would, in all possibility, delay the ultimate termination of this litigation, as opposed to materially advancing the same.

For the foregoing reasons, it is ordered that Plaintiff's motion for a certification to the Court of Appeals of an interlocutory appeal from this Court's order of December 18, 1974, denying cross motions for summary judgment, be, and the same hereby, is denied.